**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

**UNITED STATES OF AMERICA,**

– against –

**BORIS SACHAKOV,**

**Defendant.**

**MEMORANDUM AND**
**ORDER**

**11-CR-120**

**Appearances:**

For prosecution:

James Vincent Hayes
U.S. Department of Justice
Medicare Fraud Strike Force/EDNY
271 Cadman Plaza East
4th Floor, Room 4039
Brooklyn, NY 11201

Laura D. Mantell
United States Attorney's Office
Eastern District of New York
271 Cadman Plaza East
Brooklyn, NY 11201-1820

For defendant:

Harlan J. Protass
Clayman & Rosenberg LLP
305 Madison Avenue
Suite 1301
New York, NY 10165

Albert Y. Dayan
Law Office of Albert Y. Dayan
80-02 Kew Gardens Road
Suite 902
Kew Gardens, NY 11415

Ramsey Hinkle
Clayman & Rosenberg
305 Madison Avenue
Suite 1301
New York, NY 10165

1



Seth L. Rosenberg
Clayman & Rosenberg, Esqs.
305 Madison Avenue
Suite 1301
New York, NY 10165

**JACK B. WEINSTEIN, Senior United States District Judge:**

I.    Introduction ................................................................................................. 2

II.   Facts ........................................................................................................... 3

III.  Analysis...................................................................................................... 6

    A.    Speedy Trial Act................................................................................... 6

    B.    Superseding Indictment Not a Motion to Dismiss the Indictment ......... 7

    C.    Speedy Trial Clock Has Not Run as to All Charges ........................... 10

       1.    Health Care Fraud Charge .............................................................. 11

       2.    Health Care False Statements Charges............................................ 11

    D.    Health Care Fraud Charge Dismissed Without Prejudice.................... 14

       1.    Seriousness of the Offense ............................................................. 15

       2.    Facts and Circumstances of the Case .............................................. 16

       3.    Impact of Re-prosecution on the Administration of Justice ............. 17

       4.    Prejudice to the Defendant ............................................................. 18

    E.    Statutes Are Not Unconstitutionally Vague ....................................... 18

    F.    Statutes Do Not Violate the Commerce Clause .................................. 22

    G.    Defendant Not Entitled to a Bill of Particulars .................................. 23

IV.  Conclusion ............................................................................................... 25

I.    **Introduction**

Defendant Dr. Boris Sachakov is charged with defrauding both private health insurers

and Medicare in violation of 18 U.S.C. § 1347 and 18 U.S.C. § 1035. Superseding Indictment,

Doc. Entry 37, July 27, 2011 ("Superseding Indictment"). He now moves to dismiss all charges

2

with prejudice because of a Speedy Trial Act violation, 18 U.S.C. § 3161. Mem. of Law in Supp. of Def. Boris Sachakov's Pre-Trial Mot., Doc. Entry 47, Aug. 12, 2011 ("Def. Mem. of Law"). He alleges that the government allowed more than seventy days of unexcluded time to elapse between indictment and trial. *Id.* Further, he argues that the government's filing of a superseding indictment served as a motion to dismiss by the government, requiring this court to dismiss all of the charges in the superseding indictment with prejudice. *Id.*

Defendant also contends that Count One of the superseding indictment should be dismissed because the relevant federal statute, 18 U.S.C. § 1347, is unconstitutionally vague and does not contain a reference to interstate commerce. *Id.* Finally, the defendant demands a bill of particulars. *Id.*

Because the government inadvertently failed to request an exclusion of speedy trial time—a request that this court would undoubtedly have granted—Count One of the superseding indictment, which charges the defendant with health care fraud in violation 18 U.S.C. § 1347, is dismissed. Since this crime was charged in the original indictment, this count inherited the expired speedy trial clock of that indictment. For the reasons set forth below, dismissal is without prejudice. A new superseding indictment may include this charge.

Plaintiffs other motions are denied. Defendant's request to dismiss Counts Two through Six, which charge the defendant with health care false statements in violation 18 U.S.C. § 1035, is without any basis. His constitutional claims and demand for a bill of particulars have no merit.

II. **Facts**

Defendant was arrested on September 22, 2010 on a criminal complaint charging him with health care fraud in violation of 18 U.S.C. § 1347. Complaint, Doc. Entry 1, Sept. 21, 2010. At his arraignment, the period from September 22, 2010 through October 22, 2010 was excluded

3

pursuant to the Speedy Trial Act. Doc. Entry 5, Sept. 22, 2010; Doc. Entry 7, Sept. 22, 2010. Prior to the defendant's indictment, three additional exclusions of speedy trial time were granted: from October 22, 2010 to December 22, 2010, Doc. Entry 12, Oct. 21, 2010; from December 22, 2010 to January 5, 2011, Doc. Entry 13, Dec. 21, 2010; and from February 3, 2011 to March 5, 2011, Doc. Entry 16, Feb. 3, 2011. Notably, the continuance granted at the December 21, 2010 hearing was at the request of defense counsel, who stated that additional time was needed to review the government's evidence. Def. Mem. of Law, Ex. 4, Tr. of Criminal Cause for Order of Excludable Delay, Dec. 21, 2011, at 3:4-4:21.

On February 16, 2011, defendant was indicted on five counts of health care fraud in violation of 18 U.S.C. § 1347. Indictment, Doc. Entry 17, Feb. 16, 2011 ("Original Indictment"). Defendant was subsequently arraigned on the indictment on March 2, 2011 and pled not guilty to all counts. Doc. Entry 19, March 2, 2011.

On March 3, 2011, defendant appeared for a pre-trial conference before this court. Doc. Entry 22, Mar. 3, 2011. A trial date was tentatively set within thirty days. Objecting to such a prompt trial, the defendant instead requested a later trial date in the fall, arguing that additional time was required to prepare for what it characterized as a "complicated, document intensive case." Gov't Opp. to Def.'s Pre-Trial Mot. ("Gov't Opp."), Ex. 1, Tr. of Criminal Cause for Status Conference, Mar. 3, 2011, at 3:15-4:9. The government agreed that it would be more appropriate to try the case in the fall. *Id.* at 5:13-16. When defense counsel asked for an October 2011 trial date, the court responded that "September will give you enough time." *Id.* at 5:20-24. A trial date for September 12, 2011 was set. Failing to follow routine practice, neither the government nor the defendant moved to exclude time under the Speedy Trial Act—a motion the court would obviously have granted.

By a June 17, 2011 letter, the defendant moved for a pre-trial conference to discuss, among other things, a trial continuance until November 2011 due to the religious holidays and a scheduling conflict. Def.'s Letter, Doc. Entry 27, June 20, 2011. At the pre-trial conference on June 27, 2011, the defendant reiterated its request for a continuance, adding that counsel needed additional time "to adequately prepare for trial." Def. Mem. of Law, Ex. 10, Tr. of Pre-Trial Status Conference, at 2:12-19. The government did not oppose this request. *Id.* at 4:1-2. In its July 13, 2011 letter, the defendant again requested that the trial date be adjourned until November 2011, and the government consented. Defendant's request for a continuance was grant and the trial date was adjourned until October 12, 2011.

On July 27, 2011, a grand jury returned a new, six-count superseding indictment against the defendant. The superseding indictment charged the defendant with one count of the original health care fraud in violation of 18 U.S.C. § 1347, plus five counts of health care false statements in violation of 18 U.S.C. § 1035. *See* Superseding Indictment. It alleges that the defendant submitted claims for services not rendered, claims that misrepresented the services provided, and claims that falsely billed for a level of service higher than that performed. *Id.*

On the evening of July 27, 2011, the government contacted defense counsel and informed them that speedy trial time was not excluded at the March 3, 2011 pre-trial conference or at the subsequent conference in June. Gov't Opp. at 6. The government informed the court of this fact at a pre-trial conference the following day. Def. Mem. of Law, Ex. 11, Tr. of Status Conference, at 2:19-3:4.

The defendant was arraigned before a magistrate judge on the superseding indictment on August 8, 2011. Doc. Entry 50, Aug. 8, 2011. That same day, this court held a pre-trial conference, at which defense counsel again requested an adjournment of the trial date until

November 2011 due to his conflicting engagements. Tr. of Aug. 8, 2011 Conference at 8:22-9:13. A trial date of November 28, 2011 was set. *Id.* at 10:7. Speedy trial time from August 8, 2011 through jury selection on November 21, 2011 was explicitly excluded. *Id.* at 11:2-11.

III.    **Analysis**

A.  **Speedy Trial Act**

The Speedy Trial Act requires that criminal defendants be tried within seventy days of the later of indictment or arraignment. 18 U.S.C. § 3161(c)(1). It requires courts to exclude certain periods of time from the seventy day period, including "[a]ny period of delay resulting from other proceedings concerning the defendant" and "[a]ny period of delay resulting from the absence or unavailability of the defendant or an essential witness." 18 U.S.C. § 3161(h)(1)-(2). Courts are permitted to exclude:

> Any period of delay resulting from a continuance granted by any judge on his own motion or at the request of the defendant or his counsel or at the request of the attorney for the Government, if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial.

18 U.S.C. § 3161(h)(7).

A retroactive finding that a continuance was granted in order to further the ends of justice to create excludable time is not permitted. *United States v. Kelly*, 45 F.3d 45, 47 (2d Cir. 1995). While the Supreme Court has noted that the Speedy Trial Act is ambiguous on precisely when those findings must be "se[t] forth, in the record of the case," it has noted that "best practice . . . is for a district court to put its findings on the record at or near the time when it grants the continuance." *Zedner v. United States*, 547 U.S. 489, 507 (2006). The precedents of this circuit

suggest that time may not be excluded relying on the "ends of justice" rationale "unless the district court indicates *at the time it grants the continuance* that it is doing so upon a balancing of the factors specified by section 3161(h)(8)." *United States v. Tunnessen*, 763 F.2d 74, 78 (2d Cir. 1985) (emphasis added).

If a defendant is not brought to trial within the seventy day period, "the information or indictment shall be dismissed on motion of the defendant." § 3162(a)(2). Whether to dismiss with or without prejudice is left "to the guided discretion of the court." *United States v. Taylor*, 487 U.S. 326, 334-35 (1988); *see also United States v. Hernandez*, 863 F.2d 239, 243–44 (2d Cir. 1988).

The assumption is that a motion to dismiss an information or indictment will come from the defendant. *See* 18 U.S.C. § 3162(a)(2) (describing consequences of a motion to dismiss by the defendant). The Act is largely silent as to what, if any, effect a government motion to dismiss based on the Speedy Trial Act would have. *But see* 18 U.S.C. § 3161(h)(5) ("If the information or indictment is dismissed upon motion of the attorney for the Government and thereafter a charge is filed against the defendant for the same offense, or any offense required to be joined with that offense, any period of delay from the date the charge was dismissed to the date the time limitation would commence to run as to the subsequent charge had there been no previous charge," this time would be excluded.).

### B. Superseding Indictment Not a Motion to Dismiss the Indictment

Defendant argues that this court should treat the government's superseding indictment as a government motion to dismiss the original indictment. Def. Mem. of Law at 7-18. Such a governmental motion would require the court, the contention goes, to dismiss the motion with prejudice. *Id.* Because the Act is silent as to whether the court may grant the motion to dismiss

7

the case on speedy trial grounds without prejudice, dismissal must be granted with prejudice. *Id.* This contention is unpersuasive.

The Speedy Trial Act makes no reference to superseding indictments. For the limited purposes of calculating time on the speedy trial clock, the Court of Appeals for the Second Circuit has "analogized a superseding indictment to the situation where an indictment is dismissed at the government's request and a second indictment is later filed." *Kelly*, 45 F.3d at 48. Thus "[w]here the original indictment is pending when a subsequent charge is filed and *the superseding indictment contains an 'offense required to be joined with an originally charged offense'*, the offenses contained in the superseding indictment shall inherit both the 70-day time clock of the original indictment and the exclusions granted thereunder." *United States v. Roman*, 822 F.2d 261, 264 (2d Cir. 1987) (emphasis added); *see also Kelly*, 45 F.3d at 48.

The Court of Appeals for the Second Circuit does not require courts to treat a superseding indictment as a motion to dismiss by the government in any other context. To extend that court's reasoning regarding how to calculate speedy trial time to the circumstances of this case would advance its holding beyond the boundaries of good sense. The defendant is in fact the moving party. Nothing in the Act or the case law requires or even permits this court to treat the present motion as anything other than one brought by the defendant.

Even if the superseding indictment were to be treated as a motion to dismiss by the government, the court would retain discretion to determine whether to dismiss the indictment with or without prejudice. Trial courts have broad discretion in ruling on procedural violations and fashioning appropriate remedies in both civil and criminal matters. *See, e.g., Morris v. Slappy*, 461 U.S. 1, 11 (1983) ("[B]road discretion must be granted trial courts on matters of continuances . . . ."); *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 331 (1979) (granting

trial courts broad discretion to determine when collateral estoppel should be applied); *United States v. Bermudez*, 529 F.3d 158 (2d Cir. 2008) (stating that "courts retain a broad discretion to determine the way peremptory challenges will be exercised"); *United States v. Khalil*, 214 F.3d 111, 122 (2d Cir. 2000) (recognizing trial courts' broad discretion to decide evidentiary issues); *United States v. Certain Real Property and Premises Known as 4003-4005 5th Ave.*, 55 F.3d 78, 80 (2d Cir. 1995) (noting that "trial courts must have broad discretion to control and fashion remedies in the discovery process"); *see also* Fed. R. Crim. P. 48(b) (codifying the inherent power of the court to dismiss a case for want of prosecution and empowering the court with the discretion to dismiss a case with or without prejudice for prosecutorial delay not amounting to a constitutional violation). Nothing in the Speedy Trial Act limits a trial court's inherent discretion to determine whether to dismiss the indictment without prejudice. *See also* Fed. R. Crim. P. 2 ("These rules are to be interpreted to provide for the just determination of every criminal proceeding, to secure simplicity in procedure and fairness in administration, and to eliminate unjustifiable expense and delay.").

The legislative history of the Speedy Trial Act supports the notion that Congress did not intend the Act to eliminate discretion to dismiss an indictment without prejudice even when the motion was filed by the government. The Act was intended to protect not only the rights of criminal defendants, but the interests of society in general. The bill's purpose was "to give effect to the sixth amendment right to a speedy trial for persons charged with criminal offenses," S. Rep. No. 93-1021, 93d Cong., 2d Sess. 1 (1974), and "to assist in reducing crime and the danger of recidivism by requiring speedy trials." H. Rep. No. 93-1508, 93d Cong., 2d Sess. 8, *reprinted in* 1974 U.S. Code Cong. & Admin. News 7401; *see also United States v. Stayton*, 791 F.2d 17, 19-20 (2d Cir. 1986) ("The Speedy Trial Act was designed to effectuate the interests of society

9

in general and of the defendant in particular by ensuring that our courts mete out speedy justice."
(citation omitted)).

The Supreme Court has concluded "that, consistent with the language of the statute,
Congress did not intend any particular type of dismissal to serve as the presumptive remedy for a
Speedy Trial Act violation." As the Court explained:

> Prior to the passage of the Act, the dismissal sanction generated substantial
> controversy in Congress, with proponents of uniformly barring reprosecution
> arguing that without such a remedy the Act would lack any real force, and
> opponents expressing fear that criminals would unjustly escape prosecution. . . .
> Eventually, in order to obtain passage of the Act, a compromise was reached that
> incorporated, through amendments on the floor of the House of Representatives,
> the language that eventually became § 3162(a)(2). . . .The thrust of the
> compromise was *that the decision to dismiss with or without prejudice was left to
> the guided discretion of the district court, and that neither remedy was given
> priority.*

*United States v. Taylor*, 487 U.S. 326, 334-35 (1988) (emphasis added).

### C. Speedy Trial Clock Has Not Run as to All Charges

As noted above, where a superseding indictment is filed that contains the "same offense"
as the original indictment or "an 'offense required to be joined with an originally charged
offense', the offenses contained in the superseding indictment shall inherit both the 70-day time
clock of the original indictment and the exclusions granted thereunder." *Roman*, 822 F.2d at 263-
64; *see also United States v. Ramos*, 588 F. Supp. 1223, 1226 (S.D.N.Y. 1984) (citing Statement
of Time Limits and Procedures for Achieving Prompt Disposition of Criminal Cases for the
Southern District of New York ¶ 4(d); Guidelines Under the Speedy Trial Act for the Court of
Appeals for the Second Circuit ¶ II(L)). Where a superseding indictment charges the defendant
with the same offense as the original indictment, "any violation of the original is imputed to it,
and consequently . . . the later indictment that must be dismissed" if the speedy trial clock on the

10

original indictment has run out. *United States v. Gambino*, 59 F.3d 353, 362 (2d Cir. 1995). By contrast, the Speedy Trial Act clock begins to run anew with the filing of a new indictment that contains a different charge. *Ramos*, 588 F. Supp. at 1226 ("[A] prerequisite to the applicability of these provisions is that the subsequent filing contain "the same offense or any offense required to be joined with" the offense charged in the original filing. If the subsequent filing does not meet that prerequisite, then the subsequent filing commences its own speedy trial period.").

### 1. Health Care Fraud Charge

Because both the original and the superseding indictment charged defendant with health care fraud under 18 U.S.C. § 1347, this charge inherited the speedy trial clock of the original indictment. Since there was no time left when the superseding indictment was filed, no time was carried over from the original indictment to the superseding indictment as to that charge. *Gambino*, 59 F.3d at 362.

The speedy trial time on defendant's health care fraud charge has run out. That charge must be dismissed. *Id.*

### 2. Health Care False Statements Charges

The July 27, 2011 superseding indictment also charged defendant with five new counts of health care false statements under 18 U.S.C. § 1035. Superseding Indictment at 8-9. As explained below, these counts were not "required to be joined with an originally charged offense." They do not inherit the speedy trail clock of the original indictment, and they need not be dismissed.

Although the Speedy Trial Act does not define the term "required to be joined," the legislative history of the Act suggests that this language means joinder required by the Double

Jeopardy Clause of the Constitution. *See* S.Rep. No. 96–212, 96th Cong., 1st Sess. 10 (1979). In determining whether a charge subjects a defendant to double jeopardy, "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied . . . is whether each provision requires proof of a fact which the other does not." *Blockburger v. United States*, 284 U.S. 299, 304 (1932). "It is not determinative whether the same conduct underlies the counts; rather, it is critical whether the 'offense'—in the legal sense, as defined by Congress—complained of in one count is the same as that charged in another." *United States v. Chacko*, 169 F.3d 140, 146 (2d Cir.1999); *see also Garrett v. United States*, 471 U.S. 773, 778 (1985) ("Where the same conduct violates two statutory provisions, the first step in the double jeopardy analysis is to determine whether the legislature—in this case Congress—intended that each violation be a separate offense."). In a single prosecution charging a defendant with violations of two statutes, if the statutes are clear that Congress permitted cumulative punishments, the court is authorized to impose those punishments and the Double Jeopardy Clause is not violated. *See, e.g., Garrett*, 471 U.S. at 779; *United States v. Khalil*, 214 F.3d 111, 117 (2d Cir. 2000). *But see United States v. Kerley*, 544 F.3d 172 (2d Cir. 2008) (applying the rule of lenity where the defendant was charged with two counts of violating a single child support statute, as the "statute does not specify whether failure to pay a support obligation with respect to multiple children constitutes multiple offenses"); *United States v. Ansaldi*, 372 F.3d 118 (2d Cir. 2004) (finding that multiple charges under the same statute violated double jeopardy, as "charging one agreement to distribute one substance as multiple conspiracies is not possible, even if the distribution of the substance itself may violate more than one law").

In order to determine whether cumulative punishments are permitted, courts examine: 1) if the offenses charged are set forth in different statutes or in distinct sections of a statute; 2)

12

whether the two offenses are sufficiently distinguishable from one another, under *Blockburger*, that the inference that Congress intended to authorize multiple punishments is a reasonable one; and 3) whether the legislative history reveals an intent to authorize cumulative punishments. *United States v. Nakashian*, 820 F.2d 549, 551 (2d Cir. 1987). Where the legislative history is silent on the subject, "the court should conclude that Congress intended to authorize multiple punishments." *Id.*

In this case, it is apparent that Congress intended to authorize the government to prosecute a single defendant under both 18 U.S.C. § 1347 and 18 U.S.C. § 1035. In charging the defendant with violating both 18 U.S.C. § 1347 and 18 U.S.C. § 1035, the government has not improperly attempted to criminalize a single transaction under two separate statutes. Here, Congress has created two distinct crimes, listed in separate sections of the United States Code. This raises the presumption that Congress allowed these offenses to be cumulative.

The two offenses are sufficiently distinct so that treating them as two separate crimes does not violate *Blockburger*. The superseding indictment charges the defendant with both health care fraud, 18 U.S.C. § 1347, and five counts of health care false statements, 18 U.S.C. § 1035. Each of these crimes requires proof of a different fact. In order to prove that defendant committed health care fraud, the prosecution will have to show that the defendant engaged in or attempted to engage in a scheme to defraud, 18 U.S.C. § 1347(a), which it is not required to prove with respect to health care false statements. By contrast, in order to prove that defendant made health care false statements, the government must show that the defendant actually made a false statement, 18 U.S.C. § 1035(a)(2); it is not required to do so to prove health care fraud. A defendant can make an isolated false statement without participating in a scheme to defraud;

13

similarly, a defendant can attempt to execute a scheme to defraud without consummating that scheme by making false statements.

Finally, nothing in the legislative history of either of these two provisions indicates that Congress did not permit the punishments to be cumulative. Since the legislative history is silent, this court must assume that the the crimes may be treated separately. This interpretation is supported by their distinct treatment in the United States Code.

Because the new offenses charged in the superseding indictment require proof of a fact which the original charge did not, and vice versa, prosecution under both statutes does not violate double jeopardy. The health care false statements charges were thus not "required to be joined" in the original indictment and do not inherit the speedy trial clock of the original indictment. These counts will not be dismissed.

Refusing to dismiss the health care false statements charges furthers the underlying purpose of the Speedy Trial Act. As the Court of Appeals for the Second Circuit has noted, "Congress was concerned generally with the efficient administration of justice, and with that goal in mind, decided that the government's prosecutorial flexibility should remain unfettered in this context. Forcing the government to bring charges prematurely would burden courts with weak cases and with applications for continuances, and thus tend to defeat the public interest and the central purpose of the act." *Roman*, 822 F.2d at 266. The government should not be penalized for hesitating to bring additional charges against the defendant.

### D. **Health Care Fraud Charge Dismissed Without Prejudice**

A decision whether to dismiss without prejudice based upon a Speedy Trial Act violation impacts a defendant's liberty interest in being free from re-prosecution in violation of the double jeopardy clause. In determining whether to dismiss the case with or without prejudice, the Act

requires courts to consider "the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a re-prosecution on the administration of this chapter and on the administration of justice." 18 U.S.C. § 3162(a)(1). The Supreme Court has held that courts must also consider whether the prosecution's delay prejudiced the defendant. *Taylor*, 487 U.S. at 334.

The Speedy Trial Act is not a mere procedural device. By limiting the government's ability to drag out prosecutions, the statute provides critical protections to defendants' due process rights. It also limits the severe effects that an ongoing prosecution can have on the lives of individuals who are presumed innocent. Even in the absence of pretrial incarceration, prosecution can cause defendants to lose their business or professional licenses, impair their ability to find work or continue working, endanger their parental status, and suffer immigration consequences, as well as other personal consequences. *Taylor*, 487 U.S. at 340 (finding that delay may prejudice a defendant by interfering with his "liberty, whether he is free on bail or not, and . . . may disrupt his employment, drain his resources, curtail his associations, subject him to public obloquy, and create anxiety in him, his family and his friends").

The court has considered all relevant factors. There is no good public policy or statutory reason to dismiss the indictment with prejudice. The blunder of the government in failing to make a motion that would have been granted is no reason to set the defendant free.

### 1. **Seriousness of the Offense**

The seriousness of the offense weighs in favor of a dismissal without prejudice. *See United States v. Kiszewski*, 877 F.2d 210, 214 (2d Cir. 1989); *United States v. Mancuso*, 302 F. Supp. 2d 23, 26 (E.D.N.Y. 2004). Defendant is a medical professional who is charged with breaching the public trust by engaging in an ongoing health care fraud scheme over a two-year

15

period, during which he billed over $22 million to Medicare and private insurance companies. He faces a sentence of up to ten years in prison on the health care fraud count (18 U.S.C. § 1347), and up to five years in prison on each of the five counts of health care false statements (18 U.S.C. § 1035).

Defendant points out that other instances of fraud and misconduct in medical billing have resulted in civil and administrative, rather than criminal, dispositions, and that both the government and private insurance companies may pursue civil fraud charges against the defendant to recoup any overpayment the defendant received. The availability of these alternative remedies does not minimize the seriousness of defendant's alleged criminal conduct. A civil claim offers different remedies and serves a different purpose from a criminal prosecution. Unlike a civil claim, the purpose of a criminal charge is not primarily to recoup lost funds, but to deter and punish the individual offender, as well as to deter criminal behavior by others. Because it permits incarceration, a criminal prosecution is more punitive than a civil sanction, and is more likely to deter.

Congress has authorized the government to pursue these claims as either administrative, civil, or criminal matters. The government may, in its discretion, choose which course to pursue against the defendant. The government has elected in this case to pursue criminal sanctions against the defendant. The fact that the government has chosen to rely on civil or administrative proceedings in other cases is immaterial.

### 2. Facts and Circumstances of the Case

The facts and circumstances of the case—so far as alleged—weigh in favor of granting the motion to dismiss without prejudice. Courts have granted dismissal with prejudice where the government has demonstrated a "demonstrably lackadaisical attitude" by the government,

16

*United States v. Giambrone*, 920 F.2d 176, 180 (2d Cir. 1990); a "pattern of dilatory practices" or neglect, *id.*; bad faith, *Hernandez*, 863 F.2d at 244; or "other serious misconduct," *United States v. Wells*, 893 F.2d 535, 539 (2d Cir. 1990). An "isolated unwitting violation" of the Speedy Trial Act cannot support a decision to dismiss with prejudice. *Hernandez*, 863 F.2d at 244.

The prosecutor in this case was negligent in failing to ask that certain periods be excluded from the speedy trial clock. Contrary to common practice, the prosecution failed to ask for an exclusion of time at the defendant's initial appearance on March 3, 2011. Nor did the prosecution seek an exclusion of time at any time before the time expired on May 11, 2011. The prosecutor again failed to ask for an exclusion of time when the parties appeared before this court for a status conference on June 27, 2011.

Nevertheless, nothing in this case indicates that the prosecution's error was anything other than an "isolated unwitting violation." Significantly, several of the continuances granted in this case were requested by defense counsel. There is no pattern of delay on the part of the prosecution.

All the evidence demonstrates that the prosecution's failure to ask that certain periods be excluded from the speedy trial clock was inadvertent, not the product of bad faith or a pattern of neglect. The government has been otherwise diligent in its prosecution of the defendant. It is prepared for trial. Had the prosecution asked for an exclusion of time, whether for one of the causes listed in the Act or in the interests of justice, the court would have granted it.

### 3. Impact of Re-prosecution on the Administration of Justice

Re-prosecution will not have a negative impact on the administration of justice. As noted above, the prosecution's delay in bringing the case to trial was neither significant nor deliberate.

17

Tthe burden of having to re-indict the defendant will serve as a sufficient deterrent against future violations of the Speedy Trial Act. *See Zedner*, 547 U.S. at 499 (noting that dismissal without prejudice "imposes . . . costs on the prosecution and the court, which encourages further compliance").

By contrast, dismissal with prejudice would severely impair the administration of justice—particularly where, as here, the defendant himself requested much of the delay. While the defendant would still be subject to civil liability for his alleged frauds, the government would be wholly deprived of any criminal remedy against the defendant.

### 4. Prejudice to the Defendant

Dismissal without prejudice will not prejudice the defendant. Defense counsel requested several continuances to give it more time to prepare for trial—including the continuances that ultimately resulted in the Speedy Trial Act violation. The delay in bringing the defendant to trial has thus not impeded his defense. To the contrary, it has given counsel more adequate time to prepare that defense. The proceedings have been delayed less than six months. This delay is not so great that it is likely to interfere with the memories or availability of any witnesses. Moreover, much of the case will be based on documents.

Because the defendant is currently out on bail, the delay in bringing him to trial has not unduly inconvenienced him. While he remains subject to pretrial supervision, this burden is not so great as to require this court to dismiss the health care fraud charges with prejudice.

### E. Statutes Are Not Unconstitutionally Vague

Defendant contends that the health care fraud charge should be dismissed because 18 U.S.C. § 1347 is unconstitutionally vague. Because claims of facial invalidity are generally

limited to statutes that threaten First Amendment interests, this claim must be evaluated as applied to the defendant. *See Chapman v. United States,* 500 U.S. 453, 467 (1991) ("First Amendment freedoms are not infringed by [the statute at issue], so the vagueness claim must be evaluated as the statute is applied."). The claim is without merit.

Penal statutes are void for vagueness if they: 1) do not define the offense with sufficient clarity to allow ordinary people to understand what conduct is prohibited; or 2) if the statute is sufficiently indefinite to allow arbitrary or discriminatory enforcement. *See Skilling v. United States,* 130 S.Ct. 2896, 2927-28 (2010); *see also United States v. Roberts,* 363 F.3d 118, 122 (2d Cir. 2004). The first inquiry examines "whether the language [of the statute] conveys a sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices." *Arriaga v. Mukasey,* 521 F.3d 219, 224 (2d Cir. 2008) (citing *Jordan v. De George,* 341 U.S. 223, 231 (1951)). The second inquiry examines whether the "statutory language is of such a standardless sweep that it allows policemen, prosecutors, and juries to pursue their personal predilections." *Id. (citing Smith v. Goguen,* 415 U.S. 566, 575 (1974)). "A statute that reaches 'a substantial amount of innocent conduct' confers an impermissible degree of discretion on law enforcement authorities to determine who is subject to the law." *Id. (citing City of Chicago v. Morales,* 527 U.S. 41, 60-61 (1999)); *see also Chatin v. Coombe,* 186 F.3d 82, 89 (2d Cir.1999) ("An enactment fails to provide sufficiently explicit standards for those who apply it when it 'impermissibly delegates basic policy matters to policemen, judges and juries for resolution on an ad hoc and subjective basis.'"). In general, "when a regulation does not threaten the exercise of fundamental rights, one whose conduct is clearly proscribed by the regulation cannot successfully challenge it for vagueness." *Farrell v. Burke,* 449 F.3d 470, 496 (2d Cir. 2006).

The health care fraud statute is clear on its face. It provides that:

(a) Whoever knowingly and willfully executes, or attempts to execute, a scheme or artifice--

(1) to defraud any health care benefit program; or

(2) to obtain, by means of false or fraudulent pretenses, representations, or promises, any of the money or property owned by, or under the custody or control of, any health care benefit program,

in connection with the delivery of or payment for health care benefits, items, or services, shall be fined under this title or imprisoned not more than 10 years, or both.

18 U.S.C. § 1347.

The statute does not infringe on the defendant's fundamental rights. His conduct, as alleged in the indictment, is clearly proscribed by the statute.

He contends, however, that the statute is unconstitutionally vague because it incorporates Medicare rules on billing submissions and codes, including the Medicare Claims Processing Manual ("MCP Manual") and the American Medical Association's Current Procedural Terminology Manual ("CPT Manual"). The Court of Appeals for the Second Circuit has not previously ruled on whether 18 U.S.C. § 1347 incorporates Medicare rules on billing submissions and codes. Other circuits have upheld the constitutionality of the statute against similar vagueness challenges, holding that federal health care fraud is not defined by these manuals or other regulations. In *United States v. Franklin-El*, the Tenth Circuit rejected the claim that § 1347 would require "the incorporation and analysis of numerous [Medicaid] regulations, a provider manual, a provider agreement, and various program policies and bulletins." 554 F. 3d 903, 911 (10th Cir. 2009). The court explained:

Section 1347 is simply a fraud statute, much like the mail fraud and wire fraud statutes (both of which have withstood similar challenges . . . ). Moreover, the

20

statute applies to fraud schemes against any health care benefit program, not just Medicaid. The complexity of Medicaid regulations does nothing to alter the straightforward nature of the health care fraud statute or the straightforward allegations of fraud lodged against Defendant.

Moreover, and significantly, the health care fraud statute requires a specific intent to defraud or misrepresent. The constitutionality of an arguably vague statutory standard is closely related to whether that standard incorporates a *mens rea* requirement. The presence of a scienter inquiry can save an otherwise vague statute. The Supreme Court has recognized that a scienter requirement may mitigate a law's vagueness, especially with respect to the adequacy of notice to the complainant that his conduct is proscribed. . . . Although a specific intent requirement does not necessarily validate a criminal statute against all vagueness challenges, it does eliminate the objection that the statute punishes the accused for an offense of which he was unaware. . . . In light of this, we reject the claim that the health care fraud statute is impermissibly vague.

*Franklin-El*, 554 F. 3d at 911; *see also United States v. Janati*, 237 Fed. Appx. 843 (4th Cir.

2007) (rejecting claim that any vagueness in the CPT manual created unconstitutional vagueness

in § 1347; according to the court, "[t]he CPT manual simply does not contain mandates backed

by legal sanctions, such that officials must enforce them or that people need sufficient notice of

them so as to avoid penalties. Any vagueness in the CPT manual itself cannot be the basis for a

due process challenge to the fraud violations in this case.").

The Tenth and the Fourth Circuits seem to have reached the correct result. The health

care fraud statute provides sufficient notice to alert "ordinary people [as to] what conduct is

prohibited." *Arriaga*, 521 F.3d at 224. The language of the statute is unambiguous on its face.

Nor does the statute, in its own terms, rely on or incorporate the MCP Manual or the CPT

Manual to define the conduct it criminalizes. Any ambiguity in those manuals does not create

ambiguity in an otherwise unambiguous statute. The meaning of the fraud charged is clear.

The statute's scienter requirement provides further protections for the defendant. By

requiring that the government prove that the defendant's conduct was knowing and willful, 18

21

U.S.C. § 1347(a), the statute avoids criminalizing innocent errors caused by a mistaken interpretation of the manual. It does not confer an impermissible degree of discretion on law enforcement authorities.

### F. Statutes Do Not Violate the Commerce Clause

Defendant also claims that 18 U.S.C. § 1347 is unconstitutional because it does not contain a specific reference to commerce. This claim is without merit. The statute makes it a crime to defraud "any health care benefit program." 18 U.S.C. § 1347(a)(1). For the purposes of Title 18, a health care benefit program is defined as any public or private health care plan or contract "affecting commerce." 18 U.S.C. § 24(b). It is immaterial that § 1347 does not explicitly incorporate this definition, or that other sections of Title 18 do, *see* 18 U.S.C. § 1035(b) ("As used in this section, the term 'health care benefit program' has the meaning given such term in section 24(b) of this title.").

The statute contains the necessary jurisdictional element. *See United States v. Lauersen*, No. 98-CR-1134, 1999 WL 637237 (S.D.N.Y. Aug. 20, 1999) ("[S]ections 1347 and 1035 are constitutional because they incorporate a jurisdictional element that requires a connection between the offense in question and interstate commerce. Specifically, both sections proscribe conduct intended to defraud a 'health care benefit program', which is defined as 'any public or private plan or contract, *affecting commerce,* under which any medical benefit, item, or service is provided to any individual, and includes any individual or entity who is providing a medical benefit, item, or service for which payment may be made under the plan or contract.'" 18 U.S.C. § 24(b) (emphasis added).")

## G. Defendant Not Entitled to a Bill of Particulars

Defendant demands a bill of particulars. The defendant requests, among other things: 1) a list of all allegedly fraudulent claims submitted to Medicare, including the basis for the government's assertion that they are fraudulent and the specific Medicare rule, regulation, policy or procedure the defendant purportedly violated; 2) a list of all allegedly fraudulent claims submitted to private insurers, including the basis for the government's assertion that they are fraudulent and the specific rule, regulation, policy or procedure of the private insurer the defendant purportedly violated; 3) a list of all patients for whom these allegedly fraudulent claims were submitted, specifying the services that were not rendered, were misrepresented, or were falsely billed, along with the patient's contact information and the specifics of the claim submitted to either Medicare or a private insurer; and 4) the identities of the patients identified by initials in Counts Two through Six of the superseding indictment, as well as the specifics of the alleged fraud. For the following reasons, his request is denied. Def. Mem. of Law at 43-44.

The Federal Rules of Criminal Procedure only require that an indictment set forth a "plain, concise and definite written statement of the essential facts constituting an offense." Fed. R. Crim. P. 7(c). "[A]n indictment is sufficient when it charges a crime with sufficient precision to inform the defendant of the charges he must meet and with enough detail that he may plead double jeopardy in a future prosecution based on the same set of events." *United State v. Walsh*, 194 F.3d 37, 44 (2d Cir. 1999). The Court of Appeals for the Second Circuit has "consistently upheld indictments that do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime." *United States v. Pirro*, 212 F.3d 86, 92 (2d Cir. 2000).

The decision to grant a bill of particulars rests within the sound discretion of the district court. *United States v. Panza,* 750 F.2d 1141, 1148 (2d Cir. 1984). The purpose of bill of particulars is to enable "a defendant to prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense." *In re Terrorist Bombings of U.S. Embassies in East Africa,* 552 F.3d 93, 150 (2d Cir. 2008). "A bill of particulars should be required only where the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is accused." *United States v. Torres,* 901 F.2d 205, 234 (2d Cir. 1990), *overruled on other grounds as recognized by United States v. Marcus,* 628 F.3d 36 (2d Cir. 2010). If the information the defendant seeks "is provided in the indictment or in some acceptable alternate form," such as discovery or other correspondence, no bill of particulars is required. *United States v. Bortnovsky,* 820 F.2d 572, 574 (2d Cir. 1987). Where the documentary record is particularly voluminous, some additional information may be necessary to help counsel prepare an adequate defense. *Id.* at 574-75 (holding that, in a case alleging mail fraud, "[t]he Government did not fulfill its obligation merely by providing mountains of documents to defense counsel who were left unguided as to which documents [and claims] would be proven falsified;" "appellants were hindered in preparing their defense by the district court's failure to compel the Government to reveal crucial information: the dates of the fake burglaries and the identity of the three fraudulent documents").

In this case, the superseding indictment adequately places the defendant on notice of the charges against him. The indictment cites to and tracks the language of the relevant statute; it specifically identifies the elements of the offense charges, the time and place of the defendant's conduct, and the allegations against the defendant. *Pirro,* 212 F.3d at 92. For each of the five counts of health care false statements, the government has provided the initials of the

24

beneficiary, the date range, the services billed, the benefit program billed, and the approximate claim amount. Superseding Indictment at 9.

Moreover, as early as March 2011, the government disclosed or made available to the defendant the vast majority of the evidence in its possession, including claims data from Medicare and private insurance companies, patient files, and an analysis of defendant's Medicare billings. The court has also ordered the government to provide the defense with the list of witnesses, documents, and cases which the prosecution intends to rely on, Def. Mem. of Law, Ex. 10, Tr. of Pre-Trial Status Conference, June 27, 2011, at 4:24-5:1, and to open its file in the case to the defendant, Tr. of Hr'g, Sept. 19, 2011. Together, these materials give the defense sufficient guidance so that it will not be unfairly surprised at trial. While the government is not required to provide full evidentiary detail on everything it intends to present to the jury, *Torres*, 901 F.2d at 234 ("Acquisition of evidentiary detail is not the function of the bill of particulars."); *United States v. Larracuente*, 740 F. Supp. 160, 163 (E.D.N.Y. 1990) ("A bill of particulars is not to be viewed as a discovery device to seek and compel disclosure of the Government's evidence prior to trial."), such detail has been or will shortly be provided to the defendant pursuant to court direction. *See* Tr. of Hr'g, Sept. 19, 2011.

IV. **Conclusion**

Count One of the superseding indictment, which charges the defendant with health care fraud in violation of 18 U.S.C. § 1347, is dismissed without prejudice on speedy trial grounds. The government may seek to have the defendant reindicted.

All other motions are denied.


SO ORDERED.

25

Jack B. Weinstein

Senior United States District Judge

Dated: September 20, 2011

Brooklyn, New York