U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

May 20, 2012

VIA ECF

Honorable Jack B. Weinstein
United States District Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

   Re: United States of America v. Boris Sachakov, M.D.
      Cr. No. 11-120 (S-2)

Dear Judge Weinstein:

  Please accept this letter as a response and opposition to defendant Boris Sachakov's May 18, 2012 letter seeking to preclude testimony of certain government witnesses.

  1. Defendant is mistaken in his contention that certain testimony of five witnesses, James Bavoso, Sandra Dorman, Dustin Dibble, Harry Guglielmo and Jean Stone, will be expert testimony. Bavoso, Dibble and Guglielmo are employees of companies to whom the defendant submitted claims, including the fraudulent claims that are at the heart of this indictment. Bavoso is employed by NGS, a contractor hired by Medicare to enroll providers and to process claims. Dibble and Guglielmo are employed by insurance companies with whom defendant enrolled as a provider and to whom defendant submitted claims. Dorman is employed by a contractor employed by Medicare to investigate fraud. Stone is employed by CMS, the entity whose funds were fraudulently taken. Their anticipated testimony is properly treated as fact testimony and/or lay opinion, not expert testimony. See United States v. Rigas, 490 F.3d 208, 222 (2d Cir. 2007) (where testimony was from "someone who has gone through the books and records and will testify to what the books and records reflect," district court "permitted [witness] to testify as a fact witness"); id. at 224 ("The district court did not abuse its discretion in permitting [witness] to testify under Rule 701 about the effects of the disputed classification); see also United States v. Peirce, 357 Fed.Appx. 319, 322-23 (2d Cir. 2009) (district court properly allowed witness to testify about process used to create summary charts; "Because [witness's] testimony bore on relevant evidence that is helpful to a jury and was not based on expert knowledge, the district court properly admitted her lay testimony under Federal Rule of Evidence 701.") That Dorman's job is to investigate fraud does not turn her into an expert. Rigas, 490 F.3d at 224 ("A witness's specialized knowledge, or the fact that he was chosen to carry out an investigation because of this

May 20, 2012
Page Two

knowledge, does not render his testimony 'expert' as long as it was based on his 'investigation and reflected his investigatory findings and conclusions, and was not rooted exclusively in his expertise.'") (quoting Bank of China, New York Branch v. NBM LLC, 359 F.3d 171, 181 (2d Cir.2004).

  2. Defendant is incorrect in his contention that certain out-of court complaints from patients that their bills show surgeries that were not performed should be excluded as hearsay. The complaints fall into several categories, each of which we address in turn.

  Davidova, Bobyr, Dibble and Guglielmo. Davidova and Bobyr, both former employees of defendant, each will testify to conversations with defendant in which they asked defendant about complaints that the defendant had billed for surgeries that had not been performed. Davidova will testify that patients had contacted her directly, while Bobyr will testify that he asked defendant about rumors he had heard around the office. Dibble and Guglielmo will testify to communications with defendant in which they brought the patient complaints to his attention.

  Defendant's false and evasive replies to these inquiries –that the rumors are not true, that all billed procedures were performed, that they were looking into the matter, etc.- are admissible as statements of a party under Fed. R. Evid. 801(d)(2)(A) showing knowledge, and also for the non-hearsay purpose of showing consciousness of guilt. See United States v. Marin, 669 F.2d 73, 84 (2d Cir. 1982) (statement of a defendant is admissible to show that defendant made false representations "from which the jury could infer a consciousness of guilt, and hence guilt," and also is admissible as non-hearsay under Rule 801(d)(2)(A) as the statement of an opposing party).

  Davidova's, Bobyr's, Dibble's and Guglielmo's statements/communications to defendant about the complaints are offered for the non-hearsay purposes of (a) providing context for the defendant's replies, see United States v. Sorrentino, 72 F.3d 294, 298 (2d Cir. 1995) (statements of CI to defendant properly admitted where they "were not offered to prove the truth of the matters asserted but only to render what [defendant] said in these conversations intelligible"), and (b) showing defendant's knowledge. See United States v. Sayakhom, 186 F.3d 928, 944 (9th Cir. 1999) (evidence of warning to stop selling insurance "was not offered for its truth; rather it was offered to prove [defendant's] knowledge that her actions were unlawful"); United States v. Calhoon, 97 F.3d 518, 533 (11th Cir. 1996) (in Medicare fraud prosecution, noting that "the government offered Hoffman's testimony about Shackelford's statements [that they should absolutely not be filing the collapsed general ledgers] not for the truth of Shackelford's statements, but to prove that Calhoon was on notice that there was reason to question the propriety of his actions. Therefore, the testimony was not hearsay and was relevant to whether Calhoon had knowingly filed false claims."); United States v. Gold, 743 F.2d 800, 817-18 (11th Cir.1984) (where former employees testified that they had put their superiors on notice that there was reason to question whether the company's billing practices were in compliance with the law, court held the testimony relevant because it established that the conspirators had reason to know that their activities were illegal).

May 20, 2012
Page Three

   Davidova's, Bobyr's, Dibble's and Guglielmo's recounting of how they learned of this information – Davidova from patients, Bobyr from rumors around the office, Dibble and Guglielmo from calls to fraud hot lines and/or inquiries of patients – is not offered to prove the truth, but rather, for context to explain how each came to speak to defendant about it.  See United States v. Colino, No. 06-50486, 2007 WL 2316327, at *1 (9th Cir. August 14, 2007) ("The district court did not abuse its discretion in admitting Frank Faga's testimony regarding the Cilich family. The testimony was not hearsay because it was admitted to show why Faga took subsequent actions, not 'to prove the truth of the matter asserted.' Fed.R.Evid. 801(c)."); United States v. Bright, 630 F.2d 804, 815 n. 18 (5th Cir. 1980) ("One statement objected to was Macon Campbell's (an unindicted co-conspirator) testimony that Danny Owens (a part owner of a massage parlor) told him that he was paying $300 per week for protection. This was admitted for the limited purpose of showing why Campbell approached Hamilton to discuss the payoffs, i. e. to explain subsequent conduct, and not to prove the truth of the matter asserted. Accordingly, the statement is not hearsay. Fed.R.Evid. 801.")

   <u>The Patients</u>.  Several patients will testify that upon receiving explanations of benefits in which their insurer was billed for surgery, they called defendant's office to complain/report the error; one patient was told that this was done because the insurance companies did not pay enough, others were told that the matter would be corrected or looked into.

   The responses from persons employed in defendant's office are admissible as statements of a party's agents, see United States v. Laurerson, 348 F.3d 329, 340 (2d Cir. 2003) (determining that a nurse's statement that patient files were destroyed concerned a matter within the scope of her employment relationship because nurses in the defendant's office "were responsible for helping maintain patient files.").

   The patients' statements to members of defendant's office staff are admissible as evidence of defendant's knowledge, because the jury may reasonably infer that the employees reported the information to defendant.  See United States v. Vallee, 304 Fed.Appx. 916, 919-20 (2d Cir. 2008) (Canadian prosecutor's testimony that she told defendant's Canadian counsel that murder victim was "the sole witness against" him in Canadian drug prosecution was not hearsay and was properly admitted to show defendant's knowledge because the attorney-client relationship between defendant and his Canadian counsel "would permit the jury to infer the transmittal of the information"); see also United States v. Kaplan, 490 F.3d 110, 120 (2d Cir.2007).

   The patients' complaints to their insurers is admissible to provide context and to show why the insurers questioned defendant about the complaints.

   In the event that defendant attempts to suggest that the patients' memories are inaccurate (a likely strategy due to the passage of time and the age of some of the witnesses), the complaints are admissible as prior consistent statements.  See United States v. Coleman, 631 F.2d 908, 914 (D.C. Cir. 1980) ("Even where the suggestion of contradiction is only imputation of an inaccurate memory, a prior consistent statement is admissible to rebut the inference.")

May 20, 2012
Page Four

      We request that the Court provide a suitable limiting instruction.  See <u>United States v. Paulino</u>, 445 F.3d 211, 216 n. 1 (2d Cir. 2006) (limiting instruction satisfactorily ensured that the statement was not considered for its truth).

      3.    Defendant is mistaken in his suggestion that former employees of his practice or of the billing company may only testify about the named 13 beneficiaries. The Court's ruling related to one element -execution of the scheme to defraud.  More generalized evidence relating to the scheme, or to defendant's knowledge, willfulness, and intent, has not been limited.

      4.    Defendant's objection to the admission of evidence as to three of the 13 patients who were not treated personally by Dr. Sachakov, but rather were treated by Boris Bobyr, is meritless.  The government need not show that Dr. Sachakov personally treated each patient to convict him of executing a scheme to commit healthcare fraud.  Dr. Sachakov was the sole physician associated with CRCNY and was responsible for all medical treatment at the clinic. Treatment was provided under his supervision, claims were submitted under his provider number, and payment went to his bank accounts.  Thus, Dr. Sachakov may be convicted of executing a scheme to commit healthcare fraud, even with respect to patients he did not personally treat, because the scheme was executed under his direction.  Consistent with this, the Court's preliminary jury instructions permit conviction under either 18 U.S.C. § 2(a) or § 2(b).  Moreover, the evidence will show that Dr. Sachakov made statements to witnesses that he personally performed all surgeries at the clinic, even though the patients may have been treated by other employees of the clinics.

      5.    The email from defendant to Davidova in which he said "As you know I am under federal investigation for alleged health care fraud.   I may or may not go to prison. . . . If you don't drop this case as soon as possible I am going to take you down with me. . . . So do me and your children a favor, don't make me send their mother to prison" is admissible as consciousness of guilt. <u>United States v. Shorter</u>, 54 F.3d 1248, 1260 & n. 28 (7th Cir. 1995) (letter to co-defendant suggesting that he not implicate another person in testimony properly admitted as showing consciousness of guilt); <u>United States v. Lowe</u>, 96 Fed.Appx. 23, 26 (2d Cir. 2004) (defendant's statements, "Who are you? What the f- are you doing here?" properly admitted as consciousness of guilt).  The evidence also is probative of the motive and bias of the witness, Davidova.  See <u>United States v. Thomas</u>, 86 F.3d 647, 654 (7th Cir. 1996) (noting that trial courts must carefully consider probative value of threat evidence offered for purpose of assessing credibility of witness, and that evidence of threats is admissible only where necessary to account for the specific behavior of a witness that, if unexplained, could damage a party's case).

May 20, 2012
Page Five

6.  Turner, Chapney and Detman. The Court has ruled this evidence is inadmissible unless defendant opens the door. If, in our judgment, that occurs, we will approach the Court for a ruling prior to offering such evidence. If defendant opens the door at any time, including in closing argument, we reserve the right to move to reopen the evidence. See United States v. Crawford, 533 F.3d 133, 137-39 (2d Cir. 2008) (discussing when and under what circumstances it is appropriate for a district court to reopen proceedings, concluding that under some circumstances, reopening may be permissible even after deliberations have begun).

      Respectfully submitted,

      LORETTA E. LYNCH
      United States Attorney

By: _____/s/_____
      William C. Pericak
      Assistant Chief
      Sarah M. Hall
      Trial Attorney

cc: Albert Dayan, Esq. (by email)